## THE UNITED STATES OF AMERICA *vs.* KINOSUKE YAMAMOTO.

### May 25, 1907.

*Immigration—Examination of aliens applying for admission—Perjury:* In the examination of aliens applying for admission to the United States, a failure on their part to give information not called for or suggested by the line of inquiry, is not a ground for a charge of perjury. Such a witness is not required to volunteer information.

*Same—Same—Same:* If answers to questions in such a case are truthful upon any reasonable theory of the understanding of the witness as to their aim and application, they are not grounds for a charge of perjury.

*Same—Final destination of alien immigrant in the United States as affecting his right to land:* Information as to the final destination in the United States of an alien immigrant is not a matter that affects his right to enter the United States.

Immigration Act of March 3, 1903 (32 Stat. L., part 1, page 1213): Construction of section 24 as to the definition of perjury.

*J. J. Dunne,* Ass't. U. S. District Attorney, for the Plaintiff.

*S. B. Kingsbury* and *A. F. Judd,* for Defendant.

DOLE, J.   On the trial of the defendant for perjury, the prosecution offered a statement of the examination of the defendant before the board of special inquiry made in the afternoon of the day on which the questions set forth in the indictment were made, the latter having been made in the morning. The introduction of this statement was opposed on the ground that the indictment set forth no charge of perjury, and therefore that no evidence was admissible.

The theory of the prosecution is that the defendant came to Honolulu intending to go to San Jose and swore falsely as to such intention, his evidence in the morning being substantially that he was seeking employment by raising sugar cane and was

looking for work at two yen a day, which he had been informed were the wages that he could get in these islands. The afternoon examination is to be regarded as a continuance of the morning examination; that is, the two are one examination. In that he says that he is going to the mainland to meet his brother; that he did not intend to go right there but to stay here and earn money and then go to the United States, if he could get work here a while and afterwards proceed there; that when he left home he intended to go to San Jose direct but did not do so because through passports were not issued.

I gather from the statement of both the morning and afternoon examinations that he first intended to go direct to San Jose, but later, on ascertaining that no through passports were issued and also because he did not receive some expected funds from his brother, he changed his plans and borrowed enough money from his father-in-law to come to Honolulu and a little more, and came with the expectation of remaining here until he had earned enough money for his trip to San Jose. He showed no hesitation or evasion in answering the questions and giving his testimony in the afternoon or in showing his letters which he had with him, and there seems no reason to doubt but that if the afternoon questions had been asked first in the morning, the answers would have been the same.

An ignorant alien in giving information before such a board is somewhat dependent on the questions asked of him. He does not and is not required to volunteer information that is not asked, and is not likely to do so. The questions in the morning did not necessarily bring out his ultimate plans, but he may easily have honestly answered the questions which were made as he did answer them, with his plan of stopping for a while in these islands in his mind: for all the evidence shows that he had such a plan. When the afternoon questions bearing more specifically on his final destination were asked, he frankly answered them and yielded up the letters showing such destination without protest. If these considerations are correct it

15—D

would not convincingly appear that the offense of perjury is clearly charged in the indictment.

In regard to the point made as to the evidence bearing on his final destination being material, I find, as suggested by counsel for the defendant, that the matter of final destination is one of the items which the master of a ship bringing aliens to the United States is required to state in his manifest, other items being the occupation, the age, the last residence of the alien, and also others which might relate to or affect his right to land. It does not appear that this matter of final destination concerns the alien's right to land any more than the fact of his occupation or his last residence. These facts are collected from the ship master and the board of inquiry has nothing to do with them if they do not affect or relate to his right to land, and I do not see that they do.

On the third point on the construction of the part of section 24 of the immigration act (act of March 3, 1903: 32 Stat. L., part 1, page 1219), which refers to perjury, I will quote the sentence: " and any person to whom such an oath has been administered under the provisions of this act or who shall knowingly or wilfully give false testimony or swear to any false statement in any way affecting or in relation to the right of an alien to admission to the United States shall be deemed guilty of perjury," etc. The question of construction is whether the words " in any way affecting or in relation to the right of an alien to admission to the United States " applies to the previous words " who shall knowingly or wilfully give false testimony," as well as to the previous words " or swear to any false statement." My opinion is that they apply equally to both and that such application is obvious, so much so, that the question of construction need hardly arise.

The objection is sustained.